IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN WILSON a/k/a Ronnie McNair, )
a/k/a Ian Morley )
)
        Petitioner, )
)
v. ) 1:05CV00161
)
REGGIE WEISNER, Administrator, )
Alexander Correctional Institution, )
)
        Respondent. )

MEMORANDUM OPINION AND ORDER

**Sharp, Magistrate Judge**

Petitioner John Wilson (a/k/a Ronnie McNair, a/k/a Ian Morley), a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] On June 15, 2000, in the Superior Court of Guilford County, Petitioner was convicted after trial by jury of one count of conspiracy to traffic in cocaine, three counts of trafficking in cocaine, and one count of possession with intent to sell and deliver a controlled substance. He was sentenced to four consecutive terms of 175 to 219 months imprisonment. In an unpublished opinion dated May 21, 2002, the North Carolina Court of Appeals found no error in Petitioner's conviction and sentence. *State v. McNair*, No. COA01-706, 2002 WL 1013549

---

[1] The parties have consented to the trial jurisdiction of the United States Magistrate Judge and the matter has been referred to the undersigned for a ruling. *See* 28 U.S.C. § 636(c).

(N.C. App. May 21, 2002). The Supreme Court of North Carolina denied Petitioner's request for a writ of certiorari on August 12, 2004. *State v. McNair*, 358 N.C. 737 (2004). Petitioner was represented at trial by attorneys Donald Vaughan, James D. Byers, and T.O. Stokes, III, and on appeal by attorney Walter L. Jones. Attorney Gerald Beaver represented Petitioner on his petition to the North Carolina Supreme Court for a writ of certiorari.

Petitioner, by and through Attorney Beaver, filed a Motion for Appropriate Relief ("MAR") in the Superior Court of Guilford County on May 6, 2003. An evidentiary hearing was held on January 19, 2004 and the MAR was denied in part and granted in part on January 12, 2005. Petitioner's request that his conviction be set aside was denied, but a new sentencing hearing was granted. Petitioner, again through Attorney Beaver, next filed a petition for a writ of certiorari in the North Carolina Court of Appeals on January 14, 2005, which was denied on February 11, 2005.

Attorney Beaver filed the pending federal habeas corpus petition on Petitioner Wilson's behalf on February 25, 2005. The Respondent ("State") has answered the petition and moved for summary judgment. Petitioner has responded and filed a cross-motion for summary judgment.

**Claims of the Petition**

Petitioner Wilson raises two claims for relief in his habeas petition and supporting addendum and memorandum. Petitioner first contends that he received ineffective assistance of counsel for various reasons, including counsel's failure to: (1) properly cross-examine witnesses; (2) introduce and utilize favorable evidence; (3) keep him informed of the status of the case; (4) prepare for trial; and (5) disclose a conflict of interest. Second, Petitioner contends that the trial court violated his constitutional right to counsel of choice by denying his motion to substitute counsel.[2]

**Statement of Facts**

The facts of the case, as set out by the North Carolina Court of Appeals in its opinion denying Petitioner's direct appeal, are as follows:

> The Guilford County grand jury indicted Ronny McNair a/k/a/ John Wilson ("defendant") on charges of conspiracy to traffic in cocaine by possession, trafficking in cocaine by manufacturing, trafficking in cocaine by transportation, trafficking in cocaine by possession, and possession with intent to sell/deliver cocaine on 13 December 1999. A jury found defendant guilty of all five offenses on 15 June 2000. After consolidating two of the convictions for judgment, the trial court imposed four consecutive sentences of 175 to 219 months imprisonment. Defendant appeals.

---

[2] Petitioner argues two additional claims in a memorandum in opposition to the State's motion for summary judgment and in support of his cross-motion for summary judgment. Petitioner asserts that counsel were ineffective for failing to have adequate knowledge of Fourth Amendment jurisprudence and for generally demonstrating a fundamental ignorance of law and procedure. However, this Court will not address those claims because Petitioner failed to raise them in either his initial habeas petition or his supporting addendum and memorandum. *See United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988).

At the calendar call on 5 June 2000, T.O. Stokes, defendant's attorney, made a verbal motion to make a general appearance and to obtain a continuance. Defendant also sought to discharge his two privately-retained counsels. Following a hearing on the motions for 9 June 2000, the trial court found that:

> 5. Attorneys [Don] Vaughan and [J. Darren] Byers have been heretofore privately retained by the defendant and have been actively engaged in the preparation of the defendant's case for trial. . . .
>
> 6. The scheduling of this case for trial at this session has been long determined and is in no way a sudden surprise or mystery to any person . . . .
>
> 7. Mr. Stokes had conversations sometime around mid May with the District Attorney and counsel about entering the case for either codefendant Bastian or for this defendant. Nothing came of that declared possibility until the calendar was published and the calendar call for this session was had on Monday, June 5, 2000, at which time Mr. Stokes appeared and made a verbal motion that he be permitted to enter the case by way of a general appearance, and further that the case be continued from the calendar.
>
> 8. Inasmuch as the said motion was not in writing, was not in compliance with Chapter 15A of the General Statutes of North Carolina or in compliance with the local continuance policy, said motion was not well received by the Court, but out of respect for Mr. Stokes the Court scheduled a hearing on the matter so that due attention and appropriate consideration could be had and that hearing took place on June 9 as indicated.
>
> 9. The defendant was permitted to address the Court and indicated to the Court that his family had hired new counsel and that he felt he could get "better representation" from the new attorney, and "feels" that he wants a new lawyer.
>
> 10. Mr. Stokes indicated that he was not prepared to try the case, but nonetheless wanted to enter a general appearance and obtain a continuance.

After finding that Mr. Vaughan and Mr. Byers were able and experienced attorneys who had been actively engaged in representing defendant over a period of months, and that Mr. Vaughan was ready to present defendant's case, the trial court found that Mr. Stokes, while also an able and

experienced attorney, was not ready to try the case. The trial court found that allowing Mr. Stokes to enter the case would cause inordinate delay of the trial and the sentencing of other codefendants. Upon finding the motion was made irregularly and for the purpose of delay, the trial court denied the motion for a continuance and denied the motion to discharge Mr. Vaughan and Mr. Byers and to substitute Mr. Stokes. Because Mr. Stokes had indicated he was not prepared to try the case, the trial court denied his motion to enter a general appearance. In its discretion, the trial court indicated it would "permit Mr. Stokes to appear and participate together with Attorneys Vaughan and Byers in the trial of this case."

At trial the State presented evidence tending to show a drug interdiction unit approached five individuals as they disembarked from a flight from Atlanta on 24 November 1999. One individual had cocaine taped under her sweatshirt. A second individual fled on foot, and police found him without his shirt in a wooded area. Police subsequently discovered his shirt in the woods with cocaine, ace bandages, and duct tape. A third individual, Gary Sweeting (Sweeting), had cocaine taped to his lower legs. Although an officer searched defendant's bag, he did not search defendant because he was needed to chase the second individual. A chemist from the State Bureau of Investigation testified the seized cocaine had a weight of 8.4 pounds. Police arrested all five individuals.

The State asked Sweeting, a codefendant and State's witness, on direct examination about the terms of his plea agreement. Sweeting agreed that he had pled guilty to five felonies with sentences totaling in excess of 900 months imprisonment. In return for providing substantial assistance in the subsequent trials of his codefendants, Sweeting would be sentenced to the judgment of the trial court. Sweeting thereafter testified that he and defendant were friends, and when requested by defendant, Sweeting would find individuals to take the drugs. He described the events leading up to his and defendant's arrest on 24 November 1999.

During cross-examination, defendant asked Sweeting if he had "worked out a deal and a plea agreement[.]" Sweeting admitted pleading guilty, but stated "[i]t didn't sound like a deal to me." When defendant asked if Sweeting had cocaine strapped to his body on the date in question, Sweeting stated that he did. He admitted having a 1992 conviction for another drug offense. When defendant asked if it would help Sweeting if defendant was convicted in this matter, Sweeting replied, "I don't know. I don't know."

> During testimony by Detective Richard Melton ("Detective Melton"), the trial court asked if Detective Melton was familiar with the street value of cocaine and if he had an opinion as to the street value of the cocaine contained in the State's exhibits. Detective Melton stated in his opinion the cocaine had a value of "anywhere from a million to a million and a half." The State then resumed its direct examination and asked additional questions as to the basis for Detective Melton's opinion of the cocaine's value. Defendant did not object during the trial court's questions or during the State's additional questions as to the cocaine's value. Defendant presented no evidence.

*McNair*, 2002 WL 1013549, at *1-2.

## Standard of Review

Petitioner Wilson's petition for federal habeas relief is governed by the deferential standard of review set forth in 28 U.S.C. § 2254(d), part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may issue the writ only if the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "Unreasonable"

-6-

Case 1:05-cv-00161-PTS   Document 12   Filed 09/16/05   Page 6 of 19

is not the same as "incorrect" or "erroneous" and the reasonableness of the state court's decision must be judged from an objective, rather than subjective, standpoint. *Id*. at 409-10. As for questions of fact, state court findings are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**Discussion**

Claim I

Petitioner Wilson's first claim for relief is that he was denied his Sixth Amendment right to the effective assistance of counsel. "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). An ineffective assistance of counsel claim is evaluated by using a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result was not reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish ineffectiveness, a "[petitioner] must show that counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms." *Id.* at 688.

"It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense

-7-

after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. Therefore, in determining whether counsel's performance was deficient, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Similarly, in determining whether petitioner has shown prejudice, "it is insufficient to show only that the errors had some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet this test." *Williams*, 529 U.S. at 394; *see also Strickland*, 466 U.S. at 693. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The petitioner bears the 'highly demanding' and 'heavy burden' in establishing actual prejudice." *Williams,* 529 U.S. at 394.

Petitioner's ineffective assistance claim is divided into five sub-claims, four concerning trial counsel and one concerning appellate counsel. All sub-claims were raised either in Petitioner's direct appeal or MAR and were found by the state courts to merit no relief.

-8-

Case 1:05-cv-00161-PTS    Document 12    Filed 09/16/05    Page 8 of 19

A.  <u>Petitioner asserts that his trial counsel were ineffective for failing to conduct an appropriate and reasonable cross-examination of key prosecution witnesses, Gary Sweeting and Crystal Lovett.</u>

Petitioner claims that the cross-examinations of alleged co-conspirators Gary Sweeting and Crystal Lovett were deficient in several respects. He contends that the representation he received at trial was objectively unreasonable under Sixth Amendment standards because of counsel's failure to: (1) cross-examine Lovett concerning a twelve-page proffer of testimony she made to the prosecution; (2) further impeach Sweeting concerning a prior conviction; and (3) cross-examine both witnesses concerning a "jailhouse letter" written by Sweeting to Lovett.

Petitioner first raised this claim on direct appeal with respect to the cross-examination of Sweeting. The North Carolina Court of Appeals found the claim to be without merit, noting that defense counsel "elicited that Sweeting had a plea arrangement with the State, that he had cocaine strapped on his body on the date in question, and that he had a 1992 conviction for another drug offense." *McNair*, 2002 WL 1013549, at *3. Petitioner resubmitted this claim in his MAR and broadened it to include the cross-examination of Lovett in light of newly discovered evidence (i.e. - the "jailhouse letter," which was omitted from the original file obtained by appellate counsel and discovered late during the direct appeals process). The state MAR court denied Petitioner's claim based upon the prejudice prong of the two-pronged *Strickland* ineffective assistance of counsel test and found as follows:

-9-

> [A] failure to . . . make additional inquiries regarding Mr. Sweeting's prior conviction did not render defense counsel's assistance constitutionally defective.
>
> . . .
>
> . . . Even if the testifying co-conspirators had been subject to cross-examination more vigorous than that conducted by defense counsel, they still would have provided corroborating and largely consistent, if more detailed accounts implicating themselves and the Defendant in the crimes charged. No where within the handwritten letter is the Defendant exonerated of knowing involvement in the crimes charged by its author. To the contrary, it may be argued that the writing merely corroborates Mr. Sweeting's claims on direct examination regarding the Defendant's place in the conspiracy's hierarchy. To be sure, the handwritten letter does have some impeachment value – at least as to Mr. Sweeting . . . . However, when a defendant challenges a conviction, the inquiry focuses on whether there is a reasonable probability that absent the particular error, even an unreasonable error, the fact finder would have had a reasonable doubt respecting guilt. The Court concludes as a matter of law that the Defendant has not met that burden given the weight of the evidence that supported the verdicts in this matter. No prejudice resulted from the alleged ineffective assistance of counsel in the proceedings before the jury.

(Pleading No. 5, State's Br., MAR Order at 5-6.)

First, counsel's alleged failure to utilize Lovett's proffer of testimony for impeachment purposes cannot be considered in this habeas action. This Court must confine its review to the claim as presented by Petitioner in his direct appeal and MAR. *See Wilson v. Moore*, 178 F.3d 266, 272-73 (4th Cir. 1999). "[A] federal habeas applicant must develop the factual basis for a claim in state court to 'accommodate concerns of finality, comity, judicial economy, and channeling the resolution of claims into the most appropriate forum.'" *Id.* at 272 (quoting *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8 (1992)). Failing to properly

develop a claim in state court cannot be distinguished from failing to properly assert it in federal court. *Id.* at 272-73.

In the present case, the state courts were not afforded an opportunity to address counsel's effectiveness in cross-examining Lovett with regard to her proffer. While Petitioner allegedly did not learn of the proffer until January 13, 2004, over eight months after he filed his MAR, he failed to amend the MAR based on this newly-discovered evidence. Rather, he waited over one year for the MAR court to render its decision before first raising the issue in a discretionary petition for a writ of certiorari to the North Carolina Court of Appeals. In fact, the proffer could easily have been discovered earlier with due diligence; it was discussed during trial and is clearly mentioned in the trial transcript during the cross-examination of Lovett.

> Q. [Attorney Vaughan] And you entered into a proffer that was typed up by Mr. Clifford's office, did you not?
>
> A. [Lovett] Yes, I did.
>
> Q. And what is a proffer?
>
> A. I believe a proffer is the admission of the truth as you know it.
>
> Q. And what do you expect to gain from that proffer?

(Trial Tr., Vol. 2, at 86.) Because Petitioner's claim concerning Lovett's proffer was not properly developed in state court, it must accordingly be denied. Petitioner's ineffective cross-examination claims concerning Sweeting's prior conviction and the "jailhouse letter," however, were properly presented in state court and will be reviewed on their merits.

In 1992, Sweeting was convicted in Florida of trafficking in cocaine. During trial, counsel cross-examined Sweeting concerning his prior conviction as follows:

> Q. [Attorney Vaughan] Had you not been convicted in 1992 of another drug offense?
>
> A. [Sweeting] Yes.
>
> Q. And it helps you if John Wilson [Petitioner] is convicted in this matter, does it not?

(Trial Tr., Vol. 2, at 134.) Petitioner contends that it was objectively unreasonable for counsel not to elicit further details of the prior conviction. He argues that counsel's failure to specify that Sweeting's prior conviction was for the same offense faced by Petitioner in this case and that the prior conviction occurred before Sweeting and Petitioner even met amounted to ineffective assistance.

Following their arrest and while they were incarcerated awaiting trial, Sweeting wrote a "jailhouse letter" to Lovett that contained the following:

> I just found out about the Discovery. What were you thinking about? These people [are] trying to fry us all. The only thing they have on the Discovery is the shit you say. . . .
>
> Only you can cause us [to] do some serious time, 'us' me and you. I hope you did not sign any of this. You need to straighten this shit up. This stuff belongs to Perry and Wilson [(Petitioner)], not me. They pay you, not me. What were you thinking? Fuck them, not me.
>
> We can go home next month if you follow the right directions on the search. Elegal (sic) search. Please listen to me. My lawyer says that if we both have the same story from the beginning to the end we can win. So follow the directions outlined in the other papers. All the times and position at the airport. Read them carefully and do and say practically the same things. Let

-12-

> them know that you never said anything until after you were arrested and taken to a room. And I never gave consent to be search bodily (sic), only my bag. . . .
>
> If we go any further in trial use them, not me. Let them take the fall, not me fool. We both would be saying the same thing. . . .
>
> Fix it please. If two of us say it's theirs it's a better case.

(Pleading No. 5, State's Br.)

Evidence tends to show (and the state MAR court found) that counsel received this letter before trial but failed to use it to impeach the testimony of either Sweeting or Lovett. Petitioner contends that omitting such valuable impeachment evidence was objectively unreasonable and necessitates that his conviction be vacated. The MAR court disagreed. It made no specific finding on counsels' alleged incompetence, but found that even if counsels' alleged cross-examination error was unreasonable, no prejudice resulted from that error.

In the course of habeas review of an ineffective assistance of counsel claim, it is often most efficient to review the prejudice prong of the *Strickland* test first (as the MAR court did). If the petitioner cannot show prejudice from counsel's alleged errors, the ineffective assistance claim cannot prevail whether or not counsel's performance was deficient in some respect. In the present case, the State's evidence that Petitioner was involved in the trafficking of cocaine as alleged in the indictment was compelling. Trial testimony established that Petitioner and his alleged co-conspirators made frequent trips from south Florida to Greensboro over a short period of time, that lump-sum cash payments were made for the entire group for one-way tickets with quick return flights, and that Petitioner and his

-13-

alleged co-conspirators used aliases and fictitious addresses. After an anonymous tip and subsequent investigation, law enforcement officers arrested Petitioner and his alleged co-conspirators as they disembarked in Greensboro from an Atlanta flight and seized 8.4 pounds of cocaine with an estimated street value of over one million dollars.

As found by the MAR court (MAR Order at 5), the weight of the evidence introduced at trial against Petitioner was overwhelming; there is simply no reasonable probability of a different outcome had counsel conducted more thorough and vigorous cross-examinations of Sweeting and Lovett. Defense counsel established that Sweeting was a repeat drug offender and counsel's failure to specify that the prior conviction was for the exact same charge faced by Petitioner and that it occurred before Sweeting and Petitioner met does not undermine this Court's confidence in the verdict. Furthermore, while the "jailhouse letter" contained valuable impeachment material, it may also be fairly read to corroborate the testimony of Sweeting and Lovett linking Petitioner to the drug trafficking conspiracy. Petitioner has not met his "highly demanding" and "heavy burden" in establishing actual prejudice. The state court decisions denying this claim for lack of prejudice were neither contrary to, nor an unreasonable application of, established Supreme Court precedent. Accordingly, Claim I(A) is denied.

B. Petitioner asserts that his trial counsel were ineffective for failing to introduce and utilize favorable evidence in their possession at trial.

Petitioner claims that trial counsel were ineffective for failing to introduce and utilize favorable evidence in their possession at the time of trial (i.e. - Lovett's proffer, Sweeting's

-14-

prior conviction, and the "jailhouse letter"). This claim is essentially a restatement of Claim I(A) and is denied for the same reasons. Even if counsel's performance could be said to be deficient, Petitioner has failed to establish resulting prejudice.

C. <u>Petitioner asserts that his trial counsel were ineffective for failing both to keep Petitioner adequately informed of the status of his case and to adequately prepare for trial.[3]</u>

Petitioner claims that trial counsel failed to both prepare for trial and keep him updated on the status of the case. These claims are based solely on the lack of information contained in the case files received by Petitioner's current counsel, which allegedly do not contain notes or memoranda concerning client meetings/conversations or other trial preparation. The state MAR court, following an evidentiary hearing, concluded that Petitioner was not prejudiced by counsel's representation and found that trial counsel frequently communicated with and visited Petitioner while he was in custody pending trial and made adequate trial preparations. (MAR Order at 2-3.)

First, these claims are conclusory in nature and may be dismissed as such. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992). Other than allegations of a sparse case file, Petitioner presents no further evidence to support these claims. No evidence is presented of what counsel allegedly failed to do, only argument that counsel failed to memorialize what was actually done. Second, the MAR court's decision that no prejudice resulted from counsel's representation was not contrary to or an unreasonable application of *Strickland*.

---

[3] Two of Petitioner's ineffective assistance sub-claims are combined and discussed together for purposes of this Order.

Furthermore, the MAR court's findings of fact are presumed correct on habeas review and Petitioner has not presented the requisite clear and convincing evidence to rebut that presumption. 28 U.S.C. § 2254(e)(1). Claim I(C) is, therefore, denied.

D. <u>Petitioner asserts that appellate counsel was ineffective for failing to disclose a conflict of interest.</u>

Petitioner next claims that appellate counsel, Walter Jones, was ineffective for not disclosing a conflict of interest. Attorney Jones is a law partner of Lovett's attorney, Locke Clifford, and Petitioner contends that failing to inform him of the potential conflict was objectively unreasonable. This claim was raised in Petitioner's state MAR and the MAR court found no constitutional violation.

It is clearly established that the right to the effective assistance of counsel includes the right to representation that is free from conflicts of interest. *See Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir. 2002) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980)). In order to establish ineffective assistance in a conflict of interest situation, a petitioner "'must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* at 401 (quoting *Sullivan*, 446 U.S. at 348). An actual conflict of interest exists where a petitioner's interests diverge from the interests of his attorney "'with respect to a material factual or legal issue or to a course of action.'" *Gilbert v. Moore*, 134 F.3d 642, 652 (1998) (quoting *Sullivan*, 446 U.S. at 356). An adverse effect cannot be presumed solely from the existence of a conflict of interest. *Rubin*, 292 F.3d at 401.

Petitioner's conflict of interest claim is unsupported and conclusory in nature and may be dismissed as such. *See Nickerson*, 971 F.2d at 1136. While Petitioner explains the source of a potential conflict of interest, he neither demonstrates that an actual conflict existed nor explains how Attorney Jones' performance was adversely affected by the alleged conflict. Attorney Jones represented Petitioner only on appeal, and there is no showing how his arguments on appeal were adversely affected. Accordingly, Claim I(D) is denied. Viewing all of Petitioner's Sixth Amendment claims in combination, it remains clear that Petitioner cannot show the requisite prejudice to be entitled to a writ of habeas corpus.

## Claim II

Petitioner Wilson's second claim for relief is that his constitutional right to counsel of choice was violated when the trial court denied his motion to discharge his two attorneys of record and did not allow new counsel to enter a general appearance in the case. The trial court found: (1) that substituting existing counsel with counsel unable to proceed on schedule would "cause inordinate delay"; (2) that the motion to substitute counsel was motivated "solely for purposes of delay"; and (3) that Petitioner was attempting to manipulate the court. (Tr. of Mots. Hr'g at 27-29.) The North Carolina Court of Appeals affirmed the trial court's decision and noted that "'[a] defendant's right to select his own counsel cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same.'" *McNair*, 2002 WL 1013549, at *4 (quoting *State v. Poole*, 305 N.C. 308, 318 (1982)).

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend VI. "A defendant's right to have a lawyer of his or her own choosing is an essential element of the Sixth Amendment right to assistance of counsel." *United States v. Mullen*, 32 F.3d 891, 895 (4th Cir. 1994). *See also Powell v. Alabama*, 287 U.S. 45, 53 (1932) ("[A] defendant should be afforded a fair opportunity to secure counsel of his own choice."); *Flanagan v. United States*, 465 U.S. 259, 267-68 (1984) (The right to counsel of choice "reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding."). The right to counsel of choice, however, is not absolute; "[s]uch right must not obstruct orderly judicial procedure and deprive courts of the exercise of their inherent power to control the administration of justice." *United States v. Gallop*, 838 F.2d 105, 108 (4th Cir. 1988).

The United States Supreme Court has not addressed the issue of when a denial of a motion to substitute counsel constitutes a violation of the right to counsel of choice. There is no binding Supreme Court constitutional precedent that the state courts must follow. *See Vick v. Williams*, 233 F.3d 213, 222-23 (4th Cir. 2000) (denying federal habeas relief on an issue unresolved by the Supreme Court despite Fourth Circuit precedent contrary to the state court's ruling). Therefore, the state court's decision affirming the trial court's denial of Petitioner's motion to substitute counsel was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. In addition, Petitioner has done

-18-

nothing to show that, factually, the state court findings of manipulation by Petitioner for the purpose of delaying trial were incorrect. These findings are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1). Accordingly, Claim II is denied.

## Conclusion

For reasons set forth above, **IT IS ORDERED** that Respondent's motion for summary judgment [Pleading No. 4] be **GRANTED**, that Petitioner's cross motion for summary judgement [Pleading No. 8] be **DENIED**, and that this action be dismissed with prejudice. A judgment dismissing this action with prejudice will be entered contemporaneously with this Memorandum Opinion and Order.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: September 16, 2005